<u>Not for Publication</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

NORMA HARRELL, et al.,

       *Plaintiffs*,

    v.

WELLS FARGO BANK, N.A.,

       *Defendant*.

Civil Action No. 19-01417 (JMV)

<u>OPINION</u>

<u>John Michael Vazquez, U.S.D.J.</u>

This matter concerns five unrelated foreclosure actions that were litigated in state court. Plaintiffs, five[1] *pro se* litigants, bring this action against Wells Fargo Bank ("Defendant") alleging fraud in its foreclosure methods. Currently pending before the Court is a motion to dismiss Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). D.E. 8. The Court reviewed the parties' submissions in support and in opposition,[2] and considered the motions without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons stated below, Defendant's motion to dismiss is **GRANTED**.

---

[1] Another Plaintiff, Hillary Montague, formally withdrew from the case on October 7, 2019. D.E. 25.

[2] Plaintiff's Complaint will be referred to as "Compl." (D.E. 1); Defendant's brief in support of its motion will be referred to as "Def. Br." (D.E. 8-1); Plaintiff's brief in opposition will be referred to as "Pl. Opp." (D.E. 11); and Defendant's reply brief will be referred to as "Def. Reply" (D.E. 15).

## I.    BACKGROUND[3]

The five Plaintiffs allege fraud and denial of civil rights as to their mortgages and related foreclosure proceedings in New Jersey.  Plaintiffs provide a "Verified Complaint Summary" that states the following: "New Jersey Citizens have been struggling with the fraud perpetrated by Wells over the years.  In New Jersey homes are being foreclosed upon through fraudulently induced methods by its Agents and the Courts.  Plaintiffs have filed this Case ... based upon the perpetrated fraud and denial of Citizens Rights pursuant to U.S. Constitution." Compl. ¶ 8.  The Complaint then provides a separate section for each Plaintiff's "case information." Compl. ¶¶ 91-155.  Each Plaintiff, with the exception of Harrell, has faced a foreclosure action in New Jersey.  Plaintiffs include the New Jersey docket number for each foreclosure action as to each Plaintiff, *id.* ¶¶ 91, 95, 100, 116, 140, however Plaintiffs do not provide their litigation histories in the Complaint.[4]

The Complaint also provides overarching background information.  First, Plaintiffs provide historical information on the "state of foreclosures in NJ," compl. ¶¶ 16-36, which does not appear related to Plaintiffs' individual claims.  The Complaint also includes case law regarding breaches of contract and a profile of and quotations from an attorney (who appears to have no relation to Plaintiffs' personal claims) regarding foreclosure at large.  *Id.* ¶¶ 37-49.

---

[3] The factual background is taken from Plaintiff's Complaint, D.E. 1, as well as any documents referenced, relied on, or attached to Plaintiff's Complaint.  When reviewing a motion to dismiss, the Court accepts as true all well-pleaded facts in the complaint. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Additionally, a district court may consider "exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

[4] Although Plaintiffs do not set forth the procedural history of any of the underlying foreclosure actions (and, when relevant, collateral actions), these cases are matters of public record and may be considered by the Court at the motion to dismiss stage. *Pension*, 998 F.2d at 1196.

Norma Harrell

On January 13, 2006, Norma Harrell's father, Norman Harrell, took out an adjustable rate mortgage. *Id.* ¶ 92. However, in 2015, Norman defaulted on the payments and a foreclosure action was filed against him by U.S. Bank National Association, as trustee for Structured Asset Securities Corporation, through its servicer, Defendant. *Id.* ¶ 93; Def. Br. at 3. Norma claims that she "took over" when the foreclosure was filed and that on September 12, 2016, she "received notification from [Defendant] that [she] was accepted for the modification." Compl. ¶ 93 (citing D.E. 1-7 at 1-5). In support, Plaintiffs cite to and attach a letter from America's Servicing Company addressed to Norman, not to Norma, notifying him that he was approved for a modification trial period. D.E. 1-7 at 1. This letter does not mention Norma and thus does not verify her claim that *she* was approved for a modification. Nevertheless, Norma claims that she "began making payments in October 2016 and paid until March 2017," up until Defendant's employee allegedly notified her that there was a title issue and she should stop making payments. Compl. ¶ 93.

Norman's New Jersey foreclosure docket number is F-022906-15. *Id.* ¶ 91. The NJ eCourts Civil Case Jacket indicates that an uncontested order for final judgment was entered against Norman on August 8, 2017. *U.S. Bank Nat'l Ass'n v. Harrell*, No. F-022906-15 (N.J. Super Ct. Ch. Div. Aug. 8, 2017). Norma was not a named defendant in the foreclosure action. *Id.*

Dorothy M. Johnson

In 2009, Johnson refinanced her home with Franklin American Mortgage Company, who later assigned the loan to Defendant. *Id.* ¶ 96. Plaintiffs claim that starting December 23, 2011, Johnson repeatedly applied to Wells Fargo Home Mortgage requesting a 30-day forbearance. *Id.* ¶ 97. Johnson adds that she was informed on multiple occasions that her loan did not qualify for a modification review, but at one point received help in getting a modification from a Congressman

she had reached out to. *Id.* ¶¶ 97-98. Johnson described the process and "constant opposing communication from Wells Fargo Home Mortgage" as "arduous, humiliating, and stressful." *Id.* ¶ 97. She claims the communication's intent was to discourage her and "to deny [her] the right to an available option in the mortgage arsenal to lend assistance in distress." *Id.* Johnson further alleges that Defendant sent her "notices pointing to foreclosure even though [she] was current on mortgage payments throughout the dilemma." *Id.* ¶ 98. Johnson was referred to Hardest Hit, a state program, but was "denied" through that program. *Id.* ¶ 99.

Johnson's New Jersey foreclosure docket number is F-000646-18. *Id.* ¶ 95. The NJ eCourts Civil Case Jacket indicates that a foreclosure action was filed against Johnson on January 11, 2018, after she defaulted on her mortgage, by Franklin American Mortgage Company through Defendant. *Wells Fargo Bank v. Johnson*, No. F-000747-18 (N.J. Super Ct. Ch. Div. July 23, 2018). On July 23, 2018, an uncontested order for final judgment was entered against Johnson. *Id.* Johnson filed a motion to vacate the order due to fraud on September 4, 2018, and the Honorable Jodi Lee Alper, J.S.C., denied Johnson's motion on October 26, 2018. *Id.* Johnson filed a motion to reconsider on November 11, 2018, which was also denied by Judge Alper on November 29, 2018. *Id.* Johnson filed a second motion to reconsider on January 4, 2019, which was again denied by Judge Alper on July 30, 2019. *Id.*

Johnson also filed a Chapter 13 Bankruptcy proceeding on January 8, 2019 under case number 19-10387, which is still pending. D.E. 8-7.

Sharon Merriweather

Merriweather complains of the following "sequence of events:" "U.S. Mortgage, GMAC Ocwen Wells Fargo's Predatory Mortgage, Fraudulent Foreclosure, and Fraudulent Sheriff Sale." *Id.* ¶ 101. While the specifics of Merriweather's allegation are difficult to follow, it appears

Merriweather is alleging fraud in the foreclosure action by Defendant. Merriweather claims Defendant "was the owner of the mortgage held by Ocwen and they took money from the government and denied me a HAMP modification that would have given me an affordable mortgage payment." *Id.* ¶ 109. Merriweather describes a series of events that led her to fall behind in her mortgage payments. *Id.* ¶¶ 102-06. Merriweather requested modifications, but most requests were denied. *Id.* ¶¶ 105-07. Merriweather alleges that in 2018, she "called Ocwen and asked them for a copy of the Truth in Lending Statement." *Id.* ¶ 108. Upon receiving "two Truth in Lending Statements with different amounts, one written in pen, one signed by [Merriweather] and the other signature not [Merriweather's]," Merriweather alleges that she discovered one of the signatories was "convicted in a property flipping scheme in 2011" and received jail time. *Id.* Therefore, Merriweather claims she was a "victim of fraud." *Id.*

Merriweather's New Jersey foreclosure docket number is F-017509-15. *Id.* ¶ 100. The NJ eCourts Civil Case Jacket indicates that an uncontested order for final judgment was entered against Merriweather on January 25, 2018. *Wells Fargo Bank v. Merriweather*, No. F-017509-15 (N.J. Super Ct. Ch. Div. Jan. 25, 2018). On February 13, 2019, Merriweather filed a motion to reconsider on the basis of fraud, which was denied on July 9, 2019 by the Honorable John Bedrin Murray, J.S.C. *Id.*

Ajay Kajla

Kajla's background section and allegations are difficult to follow. It appears a foreclosure action was filed against him on December 7, 2007. *Id.* ¶ 120. Kajla states that Defendant is the "Master Servicer" that has been "handling the foreclosure." *Id.* ¶ 126. Kajla alleges violations of "New Jersey's Court Rules on Foreclosure" since the assignment of mortgage and a copy of the note were not provided until 55 days after the Complaint was filed. *Id.* ¶ 122. He also claims

multiple assignments related to his case were made fraudulently. *Id.* ¶¶ 122, 128-37. Furthermore, Kajla claims that "none of the Judges ruled correctly or even addressed these facts and there [sic] Rule violations." *Id.* ¶¶ 122-23.

Kajla's New Jersey foreclosure docket number is F-034025-07. *Id.* ¶ 116. The NJ eCourts Civil Case Jacket indicates that U.S. Bank National Association, as trustee for Credit Suisse First Boston MBS ARMT 2005-8, brought a foreclosure action against Kajla and his wife after they defaulted on their mortgage. *U.S. Bank Nat'l Ass'n v. Kajla*, No. F-34025-07 (N.J. Super Ct. Ch. Div. Mar. 6, 2015). The Honorable Paul Innes, P.J. Ch., entered a second amended final judgment on March 6, 2015. *Id.* Kajla moved to vacate the judgment, was denied relief, and appealed the order denying his motion to vacate to the Appellate Division, which affirmed the order. *U.S. Bank Nat'l Ass'n v. Kajla*, No. A-003875-14T2 (N.J. Super. Ct. App. Div. Sept. 22, 2016). Kajla filed a petition for certification with the Supreme Court of New Jersey, which was denied. *U.S. Bank Nat'l Ass'n v. Kajla*, 228 N.J. 494, 158 A.3d 581 (2017). Then, on May 25, 2017, Kajla filed a petition for a writ of certiorari with the Supreme Court of the United States, which was denied. *Kajla v. U.S. Bank Nat. Ass'n*, 138 S. Ct. 120, 199 L. Ed. 2d 32 (2017).

On October 23, 2017, Kajla filed a case in this Court against Wells Fargo Bank and others for fraud, RICO violations, and additional violations, which was dismissed by the Honorable Anne Thompson on March 1, 2018. *Kajla v. U.S. Bank Nat'l Ass'n for Credit Suisse First Bos. MBS ARMT 2005-8*, No. CV 17-8953, 2018 WL 1128498, at *8 (D.N.J. Mar. 1, 2018). Judge Thompson dismissed four of Kajla's counts pursuant to the *Rooker-Feldman* doctrine and dismissed the fifth count for failure to state a claim. *Id.* at *5, *7. Kajla appealed Judge Thompson's decision to the Third Circuit, and the Third Circuit remanded the case to the District Court "for the limited purpose of determining whether Phelan Hallinan Diamond & Jones, PC was served with the complaint and

addressing the allegations raised by counsel regarding service." *Kajla v. U.S. Bank Nat'l Ass'n for Credit Suisse First Bos. MBS ARMT 2005-8*, No. 18-1718 (3d. Cir Feb. 27, 2019). On March 27, 2019, Judge Thompson found that Defendant Phelan was not served with the Complaint. *Kajla v. U.S. Bank Nat'l Ass'n for Credit Suisse First Bos. MBS ARMT 2005-8*, No. CV 17-8953, 2019 WL 1375894, at *5 (D.N.J. Mar. 27, 2019).

During the relevant time, the NJ eCourts Docket Case Jacket indicates that Kajla filed numerous motions in his New Jersey state foreclosure action to set aside and stay the sheriff's sale, to avoid eviction, and for reconsideration.

<u>Jose Rodrigues</u>

Rodrigues' background and allegations are hard to follow, but it appears that he is claiming that the assignments of his mortgage were fraudulently made. Compl. ¶¶ 141, 156. Rodrigues alleges "violation of N.J.S.A. 2C:28-7a (2) (1) and (2) tampering with public records or information and recording a fraudulent document." *Id.* ¶ 154.

Rodrigues's New Jersey foreclosure docket number is F-022058-17. *Id.* ¶ 140. The NJ eCourts Civil Case Jacket indicates that HSBC Bank USA, National Association, as Trustee for Wells Fargo Asset Securities Corporation, Mortgage Pass-Through Certificates, Series 2007-7 brought a foreclosure action against Rodrigues after he defaulted on his mortgage. *HSBC Bank USA v. Rodrigues*, No. F-002058-17, (N.J. Super Ct. Ch. Div. Sept. 25, 2017). After numerous filings and proceedings regarding this action, including motions to reconsider, the Honorable Jeffrey R. Jablonski, P.J. Ch., entered an uncontested order for final judgment on April 24, 2019. *Id.*

In addition to the foreclosure action, Rodrigues filed a complaint in state court to quiet title, which was dismissed through summary judgment on January 9, 2015. *Rodrigues v. Wells Fargo*

*Bank, N.A.*, No. C-144-13 (N.J. Super Ct. Ch. Div. Jan. 9, 2015). Rodrigues appealed, and the Appellate Division affirmed. *Rodrigues v. Wells Fargo Bank, N.A.*, No. A-2373-14T4, 2016 WL 2759358, at *4 (N.J. Super. Ct. App. Div. May 13, 2016). Rodrigues filed a petition for certification with the Supreme Court of New Jersey, which was denied on October 7, 2016. *Rodrigues v. Wells Fargo Bank, N.A.*, 228 N.J. 27, 154 A.3d 167 (2016). Rodrigues followed with a petition for a Writ of Certiorari with the Supreme Court of the United States, which was also denied on October 2, 2017. *Rodrigues v. Wells Fargo Bank, N.A.*, 138 S. Ct. 116, 199 L. Ed. 2d 31, reh'g denied, 138 S. Ct. 441, 199 L. Ed. 2d 325 (2017).

Rodrigues also filed a separate action in this Court against Wells Fargo Bank and others, which the Honorable Kevin McNulty dismissed on December 23, 2016. *Rodrigues v. Wells Fargo Bank, N.A.*, No. 16-CV-3845, 2016 WL 8674615, at *10 (D.N.J. Dec. 23, 2016). Rodrigues appealed to the Third Circuit, and the Circuit affirmed the dismissal on September 26, 2018. *Rodrigues v. Wells Fargo Bank, N.A.*, 751 F. App'x 312, 318 (3d Cir. 2018). Rodrigues also moved for reconsideration, which Judge McNulty denied on May 30, 2017. *Rodrigues v. Wells Fargo Bank, N.A.*, No. 16-CV-3845, 2017 WL 2345559, at *2 (D.N.J. May 30, 2017). Rodrigues presently has a motion to reopen the case pending before Judge McNulty.

On January 28, 2019, Plaintiffs filed their Complaint. Plaintiffs allege the following six counts: (1) "Violations Stemming from 42 U.S.C. § 1983," (2) "Violations Stemming from RICO – 18 U.S.C. §§ 1961-68," (3) "Violations Stemming from – civil rights violation," (4) "Violations Stemming from Forensic Audit and Contract Law," (5) "Violations Stemming from HUD Requirements," and (6) "Violations Stemming from – Fair Debt Collection Practices Act." Compl. at 30-42.

On March 27, 2019, Defendant filed the current motion to dismiss. D.E. 8. Plaintiff filed

opposition, D.E. 11, to which Defendant replied, D.E. 15. On June 26, 2019, Plaintiff filed a letter

that the Court perceives as a notice of supplemental authority, which the Clerk's Office docketed

under the title "Amended Complaint." D.E. 19.

## II.     LEGAL STANDARDS

Rule 12(b)(1)

In deciding a motion under Federal Rule of Civil Procedure 12(b)(1) for lack of subject-

matter jurisdiction, a court must first determine whether the party presents a facial or factual attack

because the distinction determines how the pleading is reviewed.[5] A facial attack "contests the

sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that

the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional

prerequisites." *Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting

*Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)). When a party moves to

dismiss prior to answering the complaint, as is the case here, the motion is generally considered a

facial attack. *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).

For a facial attack, "the Court must consider the allegations of the complaint as true," much

like a Rule 12(b)(6) motion to dismiss. *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund,*

*Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010)

(quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)). The burden is on the

Plaintiff to prove the Court has jurisdiction. *Id.* (citing *Petruska*, 462 F.3d at 302).

---

[5] This Court also has an independent obligation to establish that it has subject-matter jurisdiction.
*Morel v. INS*, 144 F.3d 248, 251 (3d Cir. 1998).

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint that fails

"to state a claim upon which relief can be granted[.]" For a complaint to survive dismissal under

the rule, it must contain sufficient factual matter to state a claim that is plausible on its face.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows

the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* Further, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery

will uncover proof of her claims." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 789 (3d Cir.

2016).[6]

In evaluating the sufficiency of a complaint, district courts must separate the factual and

legal elements. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir. 2009). Restatements

of the elements of a claim are legal conclusions, and therefore, not entitled to a presumption of

truth. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011). The Court, however,

"must accept all of the complaint's well-pleaded facts as true." *Fowler*, 578 F.3d at 210. Even if

plausibly pled, however, a complaint will not withstand a motion to dismiss if the facts alleged do

not state "a legally cognizable cause of action." *Turner v. J.P. Morgan Chase & Co.*, No. 14-7148,

2015 WL 12826480, at *2 (D.N.J. Jan. 23, 2015).

Because Plaintiffs are proceeding *pro se*, the Court construes the pleadings liberally and

holds them to a less stringent standard than those filed by attorneys. *Haines v. Kerner*, 404 U.S.

519, 520 (1972). "The Court need not, however, credit a *pro se* plaintiff's 'bald assertions' or

---

[6] Plaintiffs cites the wrong standard of review. Pl. Opp. at 6. Plaintiffs rely on the pre-*Twombly/Iqbal* notice standard. *Id.*

'legal conclusions.'" *D'Agostino v. CECOM RDEC*, No. 10-4558, 2010 WL 3719623, at *1 (D.N.J. Sept. 10, 2010).

Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements. "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.,* 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake . . . [m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened pleading standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

## III. ANALYSIS

### A. Standing as to Norma Harrell

Defendant claims that Plaintiff Harrell does not have standing because it was Harrell's father who "was a party to a foreclosure concerning his property and his mortgage, not her property." Def. Br. at 1. Defendant argues that since Harrell "was never even involved in any of the foreclosures" and "has no relevant property interest," she lacks standing. *Id.* Harrell replies that she "has standing through the Powers of Attorney granted to her by her father[.]"[7] Pl. Opp. at 6. Even if Harrell does have power of attorney on behalf of her father, it would be insufficient to establish Harrell's standing to pursue claims on her father's behalf.

A power of attorney "'does not transfer an ownership interest in the claim' but simply confers on the agent the authority to act on behalf of the principal." *Am. Orthopedic & Sports Med. v. Independence Blue Cross Blue Shield*, 890 F.3d 445, 455 (3d Cir. 2018) (quoting *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100, 108 (2d Cir. 2008); *In re Bankers Trust Co.*, 752 F.2d 874, 881 (3d Cir. 1984)); *see also Roby v. Ocean Power Techs., Inc.*, No. 14-3799, 2015 WL 1334320, at *10 (D.N.J. Mar. 17, 2015) ("[S]tanding alone, a power of attorney does not enable the grantee to bring suit in his own name."). Accordingly, Harrell cannot bring suit in her own name based on a power-of-attorney granted by her father.

"However, an attorney-in-fact may bring a claim in a representative capacity." *Med-X Glob., LLC v. Azimuth Risk Sols., LLC*, No. 17-13086, 2018 WL 4089062, at *3 (D.N.J. Aug. 27,

---

[7] Alternatively, Harrell claims that after her father defaulted and a foreclosure was filed, Harrell "took over" and "received notification from [Defendant] that Harrell was accepted for the modification." Compl. ¶ 93 (citing Compl. Ex. 8, 1-5). However, Plaintiff's Exhibit 8 does not verify Plaintiff's claim that she formally "took over" the foreclosure action. *Id.* Plaintiff claims that she "began making payments in October 2016 and paid until March 2017," however Plaintiff has not provided evidence of such payments. *Id.* ¶ 93.

2018). In New Jersey, a power of attorney is governed by the Revised Durable Power of Attorney Act, N.J.S.A. 46:2B-8.1, *et seq*. The Act provides that "the principal authorizes another individual . . . known as the attorney-in-fact to perform specified acts on behalf of the principal as the principal's agent." N.J.S.A. 46:2B-8.2(a). These "specified acts" may include conducting legal affairs, including retaining a lawyer or authorizing a lawyer to act for the principal's benefit. *Marsico v. Marsico*, 436 N.J. Super. 483, 488 (2013). An attorney-in-fact differs from an attorney-at-law in that they need not be a lawyer. A non-lawyer attorney-in-fact, however, cannot represent the principal without a law license.[8] *Id.* at 488 n.1. In this instance, Harrell does not appear to have a law license. Thus, Harrell cannot bring claims in a representative capacity pursuant to New Jersey law.

In addition, a party may bring claims and defend himself in federal court *pro se*. 28 U.S.C. § 1654. Federal courts, however, "'routinely adhere[] to the general rule prohibiting *pro se* plaintiffs from pursuing claims on behalf of others in a representative capacity.'" *In re Radogna*, 331 F. App'x 962, 964 (3d Cir. 2009) (quoting *Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664–65 (9th Cir. 2008)). Therefore, although a power of attorney may "confer[] certain decision-making rights under state law, . . . it does not allow [plaintiff] to litigate *pro se* on behalf of [her parent] in federal court." *Id.*; *see also Yoder v. Good Will Steam Fire Engine Co. No. 1*, 740 F. App'x 27, 28 (3d Cir. 2018) (affirming decision that plaintiff "could not assert claims on behalf of her family members, over whom she claims to have power of attorney").

---

[8] A person not licensed to practice law may prosecute or defend an action in New Jersey courts only "if the person (1) is a real party in interest to this action or the guardian of the party; or (2) has been admitted to speak *pro hac vice* . . . ; (3) is a law student or law graduate . . . ; or (4) is an in-house counsel . . . ." N.J. R. 1:21-1(a)(4).

Accordingly, Harrell lacks standing to assert claims on her father's behalf. Therefore, Plaintiff Harrell's claims are dismissed with prejudice.

## B. Improper Joinder Under Rule 21

Defendant alleges that Plaintiffs' "wholly unrelated" claims are "improperly joined together" under Federal Rule of Civil Procedure Rule 20(a)(1). Def. Br. at 3, 27. Rule 21 permits a party to bring a motion for misjoinder. Rule 20(a) provides, in part:

> (1) *Plaintiffs.* Persons may join in one action as plaintiffs if:
>
> > (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; *and*
> > (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a)(1) (emphasis added). Here, Defendants challenge the joinder of Plaintiffs under the first prong, Rule 20(a)(1)(A).

Defendant asserts that "Plaintiffs' claims are all related to separate loans and separate properties." Def. Br. at 28. Defendant cites a recent case in this District, *Tredo v. Ocwen Loan Servicing*, dismissing a similar action brought by multiple borrowers against their loan servicer for misjoinder. Def. Br. at 28 (citing *Tredo v. Ocwen Loan Servicing, LLC*, 2014 WL 5092741, at *3 (D.N.J. October 10, 2014)). Just as in *Tredo*, Plaintiffs "do not allege any connections between these properties or their owners." *Tredo*, 2014 WL 5092741, at *4 (citing *Abraham v. Am. Home Mortg. Servicing*, 947 F. Supp. 2d 222, 229 (E.D.N.Y. 2013) ("It is well established that separate loan transactions by different lenders do not constitute a single transaction or occurrence and claims by plaintiffs who engaged in those separate transactions generally cannot be joined in a single action. Indeed, *even claims by plaintiffs who engaged in separate loan transactions by the same lender cannot be joined in a single action.*") (emphasis added)).

The Court agrees with Defendants. Plaintiffs' separate claims based on their individual loans do not arise out of the "same transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. P. 20(a)(1)(A), and thus have been improperly joined.

When there has been a misjoinder under Rule 21, a court may sever the case into multiple civil actions. *See, e.g., DirecTV, Inc. v. Leto,* 467 F.3d 842, 845 (3d Cir. 2006) (quoting Fed. R. Civ. P. 21) (severing parties). Accordingly, the Court will sever this action into four separate actions (excluding Harrell due to lack of standing and Montague due to her withdrawal from the case). The Court will give each Plaintiff the opportunity to file an amended complaint, guided by this Opinion, within 30 days. Each Plaintiff must pay his or her own filing fee upon bringing his or her individual claim(s) forward or file an *in forma pauperis* application with the court.

### C. Failure to State a Claim Under 12(b)(6)

In addition to misjoinder, Defendant argues that Plaintiffs have each failed to state a claim under Rule 12(b)(6). Def. Br. at 21. Defendant claims that the Complaint is "rife with the 'blanket assertions of entitlement to relief' that the *Twombly* standard guards against." Def. Br. at 10 (citing *Twombly,* 550 U.S. at 558). Further, Defendant states that "[w]hen the Complaint is stripped of its legal conclusions and formulaic recitations of the elements, as is required by *Iqbal*, it is apparent that Plaintiffs have offered absolutely no factual content that would allow a reasonable fact-finder to conclude that [Defendant] is liable for the claims alleged in the Complaint." Def. Br. at 10.

<u>Counts 1 & 3: Section 1983 and "Civil Rights Violations"</u>

Counts 1 and 3 bring constitutional claims pursuant to Section 1983. Count 1 explicitly charges a Section 1983 violation. Compl. at 30. Count 3 charges "civil rights" violations related to Plaintiffs' "constitutional rights and substantive rights," which this Court construes as a Section 1983 allegation. Compl. ¶ 205. Section 1983 provides in part:

15

> [e]very person who, under color of any statute, ordinance,
> regulation, custom, or usage, of any State or Territory or the District
> of Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an action
> at law, suit in equity, or other proper proceeding for redress[.]

4 U.S.C. § 1983. Section 1983 provides "private citizens with a means to redress violations of

federal law committed by state [actors]." *Woodyard v. Cty. of Essex*, 514 F. App'x 177, 180 (3d

Cir. 2013). Defendant claims that Plaintiffs fail to state a viable claim under Section 1983 because

"there is no claim that Wells Fargo is a state actor or was acting under color of law." Def. Br. at

22.

To bring a Section 1983 action, a plaintiff must allege the violation of a right secured by

the Constitution or laws of the United States, and must show that the alleged deprivation was

committed by a person acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988);

*see also Cottrell v. Zagami, LLC*, No. 08-3340, 2010 WL 2652229, at *4 (D.N.J. June 23, 2010).

A person "acting under color of state law," is a person whose power is derived from state law or

whose action is "made possible only because the wrongdoer is clothed with the authority of state

law." *West*, 487 U.S. at 49 (internal quotation marks omitted).[9] Defendant Wells Fargo Bank is a

private entity, not a state actor.

Nevertheless, there are numerous contexts in which a private party's actions may be fairly

attributed to the state for purposes of Section 1983. *Downey v. Coal. Against Rape & Abuse, Inc.*,

143 F. Supp. 2d 423, 438 (D.N.J. 2001). A challenged activity may be deemed state action when

> (1) it results from the State's exercise of 'coercive power'; (2) when
> the State provides significant encouragement, either overt or covert;
> (3) when a private actor operates as a willful participant in joint

---

[9] The terms "under color of law" and "state action" are interpreted identically. *See Kach v. Hose*,
589 F.3d 626, 646 (3d Cir. 2009).

activity with the State or its agents; (4) when a nominally private entity is controlled by an agency of the State; (5) when a private entity has been delegated a public function by the State; or (6) when the private entity is entwined with governmental policies, or the government is entwined in its management or control.

*Id.* None of these scenarios apply here. Plaintiffs have failed to sufficiently allege that Defendant is a state actor and/or was acting under color of state law. Counts 1 and 3 are dismissed.

## Count 2: RICO

Count 2 alleges "violation stemming from RICO – 18 U.S.C. §§ 1961-1968." Compl. at 32. To bring a federal civil RICO claim in accordance with 18 U.S.C. § 1962, a plaintiff must allege "(1) the conducting of, (2) an enterprise, (3) through a pattern, (4) of racketeering activity." *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 166, 173 (D.N.J. 1998). To establish a "pattern of racketeering," a plaintiff must allege "at least two predicate acts of racketeering that occurred within ten years of each other." *Slimm v. Bank of Am. Corp.*, 2013 WL 1867035, at *20 (D.N.J. May 2, 2013).

Plaintiffs allege that "Defendants did use electronic transmission, including fax, internet, money wire, in order to engage in deceptive and fraudulent practices, to wit: the deceptive, fraudulent and unlawful taking, theft, and attempted conversion of Plaintiffs' properties in violation of 18 U.S. Code § 1343." Compl. ¶ 189. Plaintiffs add that "Defendants have established" a "pattern of racketeering activity." *Id.* ¶¶ 191-92. Plaintiffs' allegation of wire fraud is subject to the heightened pleading standard of Rule 9(b). Fed. R. Civ. P. 9(b). Defendants claim that "there are no facts whatsoever that support this claim and indeed, [Defendant] cannot conspire with itself" and that the allegations are "devoid of any basis." Def. Br. at 23.

The Court finds that Plaintiffs' factual allegations fall far short of the requisite pleading standard. Plaintiff fails to plead wire fraud with the particularity required by Rule 9(b). To

properly plead wire fraud, plaintiffs must "plead with particularity the 'circumstances' of the alleged fraud in order to place the defendants on notice of the precise misconduct with which they are charged." *Seville Indus. Mach. Corp. v. Southmost Mach. Corp.*, 742 F.2d 786, 791 (3d Cir. 1984). Plaintiffs may plead the specific misconduct along with the "date, place, or time," or plaintiffs may "use alternative means of injecting precision and some measure of substantiation into their allegations of fraud." *Id.* The Complaint fails to allege fraud with the necessary particularity. In fact, Plaintiffs' overarching RICO allegations are conclusory. Count 2 is dismissed.

Count 4: Forensic Audit and Contract Law

Count 4 alleges "violations stemming from Forensic Audit and Contract Law." Compl. at 36-37. Specifically, Plaintiffs allege that Defendant "had agreed to that they will investigate and will provide Forensic Audit information for the information submitted on July 26, 2017." *Id.* ¶ 216. Plaintiffs define a forensic audit as "an evaluation of an individual's foreclosure financial information," the purpose of which is to "investigate the potential for any of the following: white collar crime, fraud and embezzlement, and insider trading." *Id.* ¶ 215. In support of this claim, Plaintiffs provide what appears to be notes taken after a meeting dated July 26, 2018 in Newark, New Jersey and an attendance list from said meeting. *See* D.E. 1-2. The notes state that "Senior VP Hugh Rowden committed to Wells Fargo commencing a 'Forensic Audit' on all NJ Coalition Document submitted for Fraud." *Id.* at 1. However, it is not clear exactly what the purpose of the meeting was or who wrote the notes. Further, it appears that no Plaintiffs were in attendance. *Id.*

It is difficult to understand exactly what Plaintiffs are alleging; however, it appears that Plaintiffs are alleging a breach of contract claim since Defendant allegedly promised but failed to "provide forensic audit information" to Plaintiffs. Compl. ¶ 216. Plaintiffs state that they are

bringing this claim under "Civil Nature of Suit Code 190 – Other Contract." *Id.* ¶ 52. Defendant

argues that "Plaintiffs fail to identify what contract or what provisions were violated" and that

"Plaintiffs do nothing more than make conclusory claims for a breach with no basis in fact or law."

Def. Br. at 24.

To state a claim for breach of contract, a plaintiff must allege (1) the existence of the

contract; (2) breach of the contract; (3) damages as a result of the breach; and (4) that the plaintiff

performed its own duties under the contract. *Faistl v. Energy Plus Holdings, LLC*, 2012 WL

3535815, at *7 (D.N.J. Sept. 4, 2012). A contract exists when there was a meeting of the minds,

there was an offer and acceptance; there was consideration; and there was certainty in the terms of

the agreement. *Allen v. Bloomingdale's, Inc.*, 225 F.Supp.3d 254, 258 (D.N.J. Dec. 21, 2016).

Plaintiffs have not sufficiently alleged that a contract related to forensic audits existed between the

individual Plaintiffs and Defendant. Count 4 is dismissed.

Count 5: HUD Requirements

In Count 5, Plaintiffs Harrell, Johnson, and Montague allege "violations stemming from

HUD Requirements." Compl. ¶ 226. These three Plaintiffs all had loans through the Department

of Housing and Urban Development and claim that "Defendant did not follow any HUD

guidelines[.]" *Id.* ¶ 164. Since Harrell lacks standing and Montague withdrew from the case, only

Johnson's allegation stands.

Specifically, Plaintiffs allege violations of 24 C.F.R. § 203.604(c)-(d) "providing the

required face to face meeting by the lender in a HUD mortgage," violations of 24 C.F.R. §

203.605(a) requiring "at least one trip to see the mortgagor to arrange a workout plan," violations

of 24 C.F.R. § 203.501 requiring "actions by the foreclosing entity, including recasting of the

mortgage," and violations of a requirement "that the Secretary of HUD must approve the

foreclosure." *Id.* ¶ 227. Within this same count, Plaintiffs also allege "breach of contract, breach of the covenant of good faith and fair dealing, fraud and negligent misrepresentation, negligent processing of loan modifications and foreclosures, violation of the New Jersey Consumer Fraud Act ... and violation of the Fair Debt Collection Practices Act[.]" *Id.*

Given the reference to not only the HUD regulations but also the numerous other causes of action, it is not clear to the Court what Johnson is asserting. To the extent Johnson is arguing that the HUD regulations give her a private right of action, Johnson does not claim that Congress granted an express right of action. *See Three Rivers Centers for Independent Living v. Housing Auth. of Pittsburgh*, 382 F.3d 412, 422-23 (3d Cir. 2014). Unfortunately, neither Plaintiffs nor Defendant addressed whether the particular regulations created an implied right of action. *Id.* at 423. The Court could not find any Third Circuit precedent, or any other caselaw, addressing the issue. Because Plaintiff has not demonstrated that the cited HUD regulations provide her with a viable cause of action, and because the count refers to numerous other causes of action, Count 5 is dismissed.

Count 6: Fair Debt Collection Practices Act

In Count 6, Plaintiffs (except Kajla) allege violations of the Fair Debt Collection Practices Act ("FDCPA"). Compl. at 40. Defendant argues that it "is not subject to the FDCPA because it does not fall under the statutory definition of "debt collector," either as (1) an entity whose principal purpose is debt collection of any debts; or (2) an entity who regularly collects debts owed to others." Def. Br. at 26. Defendant claims that "[f]or purposes of the relationship with the Plaintiffs (other than Harrell), [Defendant] is a lender and/or a servicer but *not*, as the Third Circuit describes, "[an] entit[y] whose principal business is to collect the defaulted debts they purchase seek[ing] to avoid the Act's reach." Def. Br. at 26-27 (citing *Tepper v. Amos Financial, LLC*, 898

F.3d 364, 365 (3d Cir. 2018)). The Court agrees with Defendants that under *Tepper*, Defendant is not governed by the FDCPA because it is not a debt collector. Count 6 is dismissed.

In light of the foregoing pleading deficiencies, and the overall confusing nature of much of the allegations, the Court is not optimistic that any individual Plaintiff will be able to plead a plausible claim. However, each Plaintiff, except for Harrell, will be granted one opportunity to file an amended complaint individually.

### D. Entire Controversy Doctrine

In addition to failure to state a claim under Rule 12(b)(6), Defendant argues that various preclusion doctrines apply, some of which the Court deems inapt.[10] For one, Defendant argues that the Complaint should be dismissed in its entirety because Plaintiffs' claims are barred by the entire controversy doctrine. Def. Br. at 17. In Plaintiffs' opposition, Plaintiffs claim that the entire controversy doctrine does not apply because "[n]one of the Plaintiffs had the opportunity to litigate as their defenses were ignored and overlooked. Discovery was not granted, due process was ignored or overlooked and the facts as produced by the Plaintiffs did not matter to any of the Judges in all the Courts that were involved." Pl. Opp. at 8. Plaintiffs' opposition shows a lack of understanding of the entire controversy doctrine, so the Court reviews the doctrine.

When deciding a motion based on preclusion, the Court applies the preclusion law from the first forum, here New Jersey state court. *Chavez v. Dole Food Co., Inc.*, 836 F.3d 205, 221 (3d Cir. 2016). "The entire controversy doctrine is essentially New Jersey's specific, and idiosyncratic, application of traditional *res judicata* principles." *Rycoline Prods., Inc. v. C & W Unlimited*, 109

---

[10] For example, the Court finds that *Younger* abstention and *Colorado River* abstention do not apply. The Court appreciates that defense counsel are vigorously representing their client, but at the same time, defense counsel are cautioned to perform a better review of the applicable abstention doctrines before arguing them to this Court.

F.3d 883, 886 (3d Cir. 1997). Similar to *res judicata*, the entire controversy doctrine "extinguishes any subsequent federal-court claim that could have been joined but was not raised in the prior state action." *Siljee*, 2016 WL 2770806, at \*7. The entire controversy doctrine is an affirmative defense that may be considered as grounds for dismissal under Rule 12(b)(6) if its application is clear from the face of the complaint. *Rycoline Prods., Inc.*, 109 F.3d at 886.

New Jersey Court Rule 4:30A, which codifies the entire controversy doctrine, provides that "[n]on-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine." Generally, "[t]he entire controversy rule applies in federal court where there has been a previous state court action involving the same transaction." *Puche*, 256 F. Supp. 3d at 547. Rule 4:30A, however, only applies to claims that could have been joined in the prior proceeding. *Siljee*, 2016 WL 2770806, at \*8. Further, in the context of foreclosure matters, the entire controversy doctrine is limited to "germane" claims. *Id.* (citing N.J. Ct. Rule 4:64-5). In other words, if a claim was not germane, it need not have been brought in the prior foreclosure action and would not be subject to the entire controversy doctrine.

A claim is germane if it arises out of the underlying mortgage transaction. *Siljee*, 2016 WL 2770806, at \*8 (quoting *Leisure Tech.–Ne. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 358 (App. Div. 1975)). A claim that is based on "conduct of the mortgagee . . . prior to the institution of a foreclosure that could be the basis of an independent action for damages by reason of the mortgagee having brought the foreclosure" is germane. *Zebrowski v. Wells Fargo Bank, N.A.*, No. 07-5236, 2010 WL 2595237, at \*6 (D.N.J. June 21, 2010) (quoting *Sun NLF Ltd. Partnership v. Sasso*, 313 N.J. Super. 546, 540 (App. Div. 1998)).

Here, Plaintiffs' claims are all premised on Defendant's "fraudulent actions" in their mortgage transactions and foreclosure proceedings. Thus, Plaintiffs' claims arise out of their individual mortgage and foreclosure actions. As a result, it appears as though Plaintiffs' current claims are germane to the underlying foreclosure actions such that they should have been, or previously were,[11] raised in each Plaintiff's state court action. For example, Johnson previously filed a motion to vacate due to fraud in state court and was denied in October, 2018. *Johnson*, No. F-000747-18 (N.J. Super Ct. Ch. Div. Oct. 26, 2018). Merriweather's motion to reconsider on the basis of fraud in state court was denied in July 2019. *Merriweather*, No. F-017509-15 (N.J. Super Ct. Ch. Div. July 9, 2018). Kajla and Rodrigues filed numerous motions and cases relating to fraud in both state and federal court. Therefore, it appears likely that Plaintiffs' claims are now barred by the entire controversy doctrine.

Since the Court is severing the case into multiple civil actions and granting each Plaintiff one opportunity to amend, the Court is not making a definitive decision as to the entire controversy doctrine. However, each Plaintiff is cautioned that as currently pled, the claims in the Complaint appear to be barred by the entire controversy doctrine.

## IV. CONCLUSION

For the reasons stated above, Defendant's motion to dismiss, D.E. 8, is granted. Plaintiff Harrell's claims are dismissed with prejudice due to lack of standing. Plaintiffs Johnson, Merriweather, Kajla, and Rodrigues' claims are to be severed into four separate actions. The Court will give each remaining Plaintiff one opportunity to file an amended complaint, guided by this

---

[11] To the extent Plaintiffs' current claims were actually litigated, decided, and necessary to the judgments in the state court proceedings, then Plaintiffs would also be barred from raising those claims in this case pursuant to issue preclusion. *See Fields v. City of Salem Hous. Auth.*, 710 F. App'x 567, 571 (3d Cir. 2017) (citing *Olivieri v. Y.M.F. Carpet, Inc.*, 186 N.J. 511, 521 (2006)).

Opinion, within 30 days. Each Plaintiff must pay his or her own filing fee upon bringing his or her individual claim(s) forward or file an *in forma pauperis* application with the Court. An appropriate Order accompanies this Opinion.

Dated: December 27, 2019

John Michael Vazquez, U.S.D.J.